UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNIVERSAL CHURCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> STANDARD CONSTRUCTION COMPANY OF SAN FRANCISCO, INC, et al., <br><br> Defendants. | Case No. 14-cv-04568-RS   (KAW) <br><br> **ORDER REGARDING JOINT DISCOVERY LETTER BRIEF** <br><br> Re: Dkt. No. 57 |

Standard Construction Company of San Francisco, Inc. and its owner, Thomas M. Sestak ("Defendants") seek to quash the subpoena Universal Church, Inc. ("Plaintiff") served on John Teague. For the reasons set forth below, the request is DENIED.

## I.   BACKGROUND

Plaintiff is a non-profit religious organization. (Compl. ¶ 1, Dkt. No. 1.) It owns a building located at 3541 20th Street in San Francisco, California. (*Id.*) On July 31, 2014, it entered into a contract with Standard Construction Company of San Francisco, Inc. ("Standard") for the repair of the building's roof. (*Id.* ¶ 10.) Standard began its repair work on August 13, 2014. (*Id.* ¶ 11.) The next day, a fire broke out on the roof, causing damages in excess of $1 million. (*Id.* ¶¶ 12, 13.)

At the time, Standard was insured under a Commercial General Liability Policy ("the Policy") issued by First Mercury Insurance Company ("FMIC"), with coverage of $1 million per occurrence. (*Id.* ¶ 14.) Plaintiff was named as an additional insured under the Policy, and on August 14, 2014, it submitted a claim for the property damage resulting from the fire. (*Id.* ¶ 14, 16.)

When its repeated demands for compensation from Standard and FMIC went unanswered,

Plaintiff filed this action, asserting claims for (1) breach of contract and the implied covenant of good faith and fair dealing against Standard and its owner, president, and CEO, Thomas M. Sestak ("Sestak"), (2) negligence against Standard and Sestak, (3) breach of insurance contract against FMIC, and (4) bad faith breach of the implied covenant of good faith and fair dealing against FMIC.[1]  (Compl. ¶¶ 20-27, 28-32, 33-37, 38-43.)

On August 20, 2014, FMIC, acting on behalf of Standard, retained Fire Cause Analysis to conduct a structural fire investigation and to determine the cause and origin of the fire.[2]  (Teague Decl. ¶ 2.)  John Teague, who has been employed by Fire Cause Analysis since 2012, was the assigned Fire Investigator.  (*Id.* ¶ 2.)  He states in his declaration that he understood he was being retained as a consulting expert in anticipation of litigation.  (*Id.*)  Teague conducted a site investigation on August 22, 2014, though he was unable to access the roof because it was structurally unstable.  (*Id.* ¶ 3.)  He states that prior to September 19, 2014, he had not received a copy of the San Francisco Fire Department's investigation report, had not completed his investigation of the fire scene, and had not formulated any opinions, conclusions or findings regarding the cause and origin of the fire, the point of origin of the fire, known ignition source of the fire, the fire source, or any other aspects of the subject fire.  (*Id.*)

On September 17, 2015, Plaintiff personally served Teague with a subpoena to testify at an October 5, 2015 deposition and a request for production of "all documents [he] prepared or received before September 19, 2014 relating to the investigation of the cause and origin of the fire that occurred at 3541 20th Street, San Francisco, California on August 14, 2014."  (Joint Ltr., Ex. A; Teague Decl. ¶ 5.)  Plaintiff did not meet and confer with Defendants prior to serving the subpoena and did not serve Defendants with notice of the subpoena until September 21, 2015.  (Joint Ltr. at 2.)  Plaintiff also did not tender any expert deposition fee with the subpoena.  (Teague Decl. ¶ 5.)  Defendants objected to the notice and request for production of documents.

---

[1] On January 21, 2015, the presiding judge dismissed the claims against FMIC without prejudice. *See* Jan. 21, 2015 Order, Dkt. No. 33.

[2] According to Plaintiff, FMIC assigned a local adjuster, Steve Churchill of Koning & Associates, and he hired Teague on August 20, 2014.  Joint Ltr. at 5.

(Joint Ltr. at 2.)  They now seek to quash the subpoena.[3]  (*Id.*)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery propounded by subpoena.  The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b).  Fed. R. Civ. P. 45 advisory committee note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any party a request within the scope of Rule 26(b).").

Rule 26(b) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  The Court, however, may limit discovery if (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, (2) the party seeking discovery has had ample opportunity to obtain the information sought, or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C).

"If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."  Fed. R. Civ. P. 45(a)(4); *see also* Fed. R. Civ. P. 45 advisory committee note (1991) ("The purpose of such [prior] notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.").

A party may move to quash or modify a subpoena under Rule 45(d)(3)(A) if it fails to (1)

---

[3] Both parties express an interest in moving for sanctions.  *See* Joint Ltr. at 5, 8.  It is unclear what possible basis Defendants would have for bringing such a motion.  If Defendants were to bring such a motion, however, they should be aware that any recovery would likely be offset by a potential award to Plaintiff.

3

allow a reasonable time to comply, (2) requires a person to comply beyond the geographical limits specified in Rule 45(c), (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies, or (4) subjects a person to undue burden. *Id.* The party moving to quash a subpoena bears the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant. *Personal Audio LLC v. Togi Entm't,* No. 14-mc-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014).

## III. DISCUSSION

Defendants request that the subpoena be quashed on the grounds that (1) Plaintiff did not serve Defendants with notice prior to serving Teague and did not allow a reasonable time for compliance, (2) Teague is a consulting expert who cannot be deposed because Plaintiff has not made the requisite showing, (3) the information Plaintiff seeks is protected under the work product doctrine, (4) the deposition is irrelevant, harassing, and unduly burdensome. (Joint Ltr. 2-5.)

Plaintiff argues that Defendants received effective notice of the subpoena and that Teague may be deposed as an ordinary non-party witness under Federal Rule of Civil Procedure 26. (*Id.* at 6-8.) The Court agrees.

### A. Defendants' procedural challenges

The Advisory Committee note to the 2013 amendment for Rule 45(a) states that "[t]he purpose of such [prior] notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." As the instant joint letter shows that such purpose has been achieved here, the Court declines to quash the subpoena on this basis. *See Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL (JSC), 2015 WL 5782351, at *4 (N.D. Cal. Oct. 5, 2015) ("The subpoenas were improper and could be quashed on this basis, but the Court declines to quash the subpoena solely on the grounds that it violated Rule 45(b)(1)'s prior notice requirement."); *Miller v. Ghirardelli Chocolate Co.*, No C 12-4936 LB, 2013 WL 6774072, at *4 (N.D. Cal. Dec. 20, 2013) (declining to quash subpoena based on failure to provide notice to Ghirardelli). Additionally, upon issuance of this order, the parties are to meet and confer to re-schedule Teague's deposition to a date mutually agreeable to the parties, and Plaintiff will accordingly re-serve the subpoena.

4

Defendants' argument that Plaintiff did not allow a reasonable time for compliance also fails.  Though "Plaintiff only provided Defendants with 11 days [*sic*] notice of the subject deposition," that amount of time nonetheless allows a reasonable time for compliance, especially absent any showing of prejudice to Defendants.  "Service of subpoenas at least 10 days before the deposition or production is customary, but not mandatory." *Bonzani v. Shinseki*, No. 2:11-cv-00007-EFB, 2014 WL 2521849, at * 4 (E.D. Cal. June 4, 2014) (internal quotations and citation omitted).  In fact, "Rule 45 specifically contemplates circumstances where the response time might be less." *Id.* (citing Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.")).  Accordingly, the fact that Defendants had 11 days' notice of the deposition is not grounds for quashing the subpoena.[4]

### B. Defendants' remaining objections

Defendants also unsuccessfully argue that the information Plaintiff seeks is protected under the work product doctrine, that Teague is a consulting expert who cannot be deposed here because Plaintiff has not made the requisite showing, and that the deposition is irrelevant, harassing, and unduly burdensome.  (Joint Ltr. 2-5.)

Plaintiff admits that litigation was anticipated by at least September 19, 2014.  (Joint Ltr. at 1, 5.)  Defendants, however, contend that litigation was anticipated earlier, at least early as August 20, 2014, which coincides with the date FMIC, acting on behalf of Defendants, retained Teague as the Fire Investigator in this matter.  (Joint Ltr. at 1, Teague Decl. ¶ 2.)  Defendants claim that this date is appropriate because that is when "Plaintiff advised that it w[ould] not seek recovery against its own insurer, but w[ould] pursue recovery against Standard Construction[,]" which is why they retained Teague.  (Joint Ltr. at 1.)  Defendants also seem to offer September 5, 2014 as a possible date on which litigation could have been anticipated because on that date, Plaintiff contacted Defendants' insurer and alleged that Standard was liable for damages.  (*Id.* at 3.)

---

[4] Additionally, the Court notes that Defendants have not established their standing to assert this objection, and it would fail for that reason alone.  *See Bonzani*, 2014 WL 2521849, at * 4 (noting that the plaintiff had not established standing to challenge the reasonableness of the time for compliance where the responding parties had not objected on that basis).

Defendants point to no legal authority that supports either date as the date by which litigation was anticipated.  Rather, their position contravenes established law on the issue.  *See Klee v. Whirlpool,* 251 F.R.D. 507, 512-13 (S.D. Cal. 2006) (quoting *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation.")) (further citation omitted).

Their attempt to distinguish *Klee* "and related cases" is unsuccessful.  (*See* Joint Ltr. at 3.) Defendants do not dispute that Plaintiff was an additional insured under its FMIC policy, that Plaintiff contacted FMIC with its claim shortly after the fire broke out on August 14, 2014, or that the claim had not been resolved at the time of Plaintiff's August 20, 2014 communication or Plaintiff's September 5, 2014 communication.  It follows, then, that either communication does not constitute a threat of litigation absent a showing, not made here, that the claims adjudication process had concluded at the time either communication occurred.  This is in line with the facts in *Klee*, where the plaintiff had submitted a claim and had been corresponding with insurance adjusters prior to threatening litigation only after that process had failed.  *See Klee*, 251 F.R.D. at 510 ("It is evident from the letters submitted to the Court that a claims decision had not been made as of the time of Mr. Monk's investigation in October 2004, nor even as of November 2004.").

Defendants also assert that unlike the adjuster in *Klee*, Teague performed a single site inspection during which he could not access the roof, never formulated opinions, and never created any report.  This, though, does not render *Klee* inapposite.  It merely distinguishes the case to the extent Teague performed less work than the adjuster in that case, who had conducted his inspection and prepared a report.  *See Klee*, 251 F.R.D. at 512.

Rather, the features of this case that Defendants claim distinguish it from *Klee* undermine their position in two significant ways.  First, it suggests, as the Court concludes here, that Teague has no protectible work product.  (*See* Teague Decl. ¶ 2.)  Second, it undermines Defendants' assertion that Teague's deposition constitutes an undue burden, as the little, if any, work he performed prior to September 19, 2014 shows that neither his deposition nor his preparation for

deposition would be particularly taxing.

Nonetheless, even if Defendants were correct that litigation was anticipated by at least as early as August 20, 2014, Teague's materials would not meet the Ninth Circuit's "because of" test and would thus fail the definition of protectible work product. "The 'because of' standard . . . considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'" *See United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 908 (9th Cir. 2004) (internal quotations, citation, and modifications omitted). "The investigation and evaluation of claims is part of the regular, ordinary and principal business of insurance companies[,]" as it is "well established that insurance companies have an independent obligation to review and follow up on claims, and their reports are thus not protected, although they are usually prepared with an eye toward litigation." *Klee*, 251 F.R.D. at 511.

Here, Plaintiff filed a claim with FMIC, and the company, acting on behalf of its insured, Standard, retained Teague to conduct an investigation. FMIC would have done so irrespective of the prospect of litigation in order to adjudicate the claim. Accordingly, any information in Teague's possession is not work product. As a result, Teague is not an expert within the meaning of Rule 26(b)(4)(D), as that rule only concerns the discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation." Teague may, therefore, be deposed as an ordinary non-party witness. Defendants have failed to convince the Court of the contrary.

Defendants' contentions that the deposition is irrelevant and harassing also lack merit. (*See* Joint Ltr. at 4.) Plaintiff explains that they seek to depose Teague regarding the knowledge and observations he obtained during his investigation prior to September 19, 2014. (*Id.* at 5.) This is relevant to the claims asserted in this case, and contrary to Defendants' assertion, Teague's knowledge and observations would not be in the possession of Plaintiff's experts.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' request to quash the subpoena served on

Teague is DENIED. The parties shall meet and confer to reschedule the deposition to a date mutually agreeable to the parties, and Plaintiff will accordingly re-serve the subpoena.

IT IS SO ORDERED.

Dated: 10/21/2015

_____
KANDIS A. WESTMORE
United States Magistrate Judge